UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MARK A. WILLIAMSON,<br><br>     Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>     Defendant. | NO. C2:14-CV-00509-RSL-JLW<br><br>REPORT AND RECOMMENDATION |

<u>BASIC DATA</u>

Type of benefits sought:

 (X) Supplemental Security Income – Disability

 (X) Disability Insurance

Plaintiff's:

 Sex: Male

 Age: 49 at application, 50 at ALJ hearing

Principal Disabilities Alleged by Plaintiff: tremors, hypertension, depression, anxiety, frozen shoulder, chronic obstructive pulmonary disease

Disability Allegedly Began: December 31, 2009

Principal Previous Work Experience: fast food service manager, kitchen clerk

Plaintiff Last Worked: July 2009

Education Level Achieved by Plaintiff: some college

REPORT AND RECOMMENDATION - 1

## PROCEDURAL HISTORY – ADMINISTRATIVE

Before ALJ Ilene Sloan:

    Date of Hearing: September 12, 2012

    Date of Decision: October 19, 2012

    Appears in Record at:  Decision AR 10-22, Hearing Transcript AR 28-62

    Summary of Decision:

    Claimant has not engaged in substantial gainful activity since his alleged onset date. He has the severe impairments of essential tremors (or "action" tremors), right shoulder degenerative arthritis, chronic obstructive pulmonary disease, affective disorder, and anxiety disorder. None of these impairments individually, or in combination, meet or medically equal a Listing. Considering these severe impairments, he has the Residual Functional Capacity (RFC) to perform light work, with limitations. He can frequently to climb ramps/stairs, but should never climb ropes/ladders/scaffolds. He can frequently kneel, crouch and crawl. He can occasionally perform overhead reaching with the dominant right upper extremity. He can do frequent handling and fingering with both upper extremities. Claimant must avoid exposure to hazards. He is able to understand, remember, and carry out simple, repetitive tasks with a Specific Vocational Preparation 1 or 2 (unskilled work). He can have occasional contact with the general public, but he cannot have tandem tasks or tasks involving team effort. He requires a low stress environment defined as able to adapt to occasional changes in the workplace setting. Based on this RFC, Claimant cannot perform his past relevant work. A Vocational Expert (VE) testified that he can perform the representative jobs of inspector/hand packager, electrical accessories assembler, and nuts and bolts assembler. Claimant is therefore capable of performing jobs that exist in significant numbers in the economy. He is not disabled.

Before Appeals Council:

    Date of Decision: February 27, 2014

    Appears in Record at: AR 1-5

    Summary of Decision: Review Declined

## PROCEDURAL HISTORY – THIS COURT

Jurisdiction based upon: 42 U.S.C. § 405(g)

Brief on Merits Submitted by (X) Plaintiff  (X) Commissioner

REPORT AND RECOMMENDATION - 2

RECOMMENDATION OF

UNITED STATES MAGISTRATE JUDGE

(X)  Reverse and Remand for further proceedings

SUMMARY OF RECOMMENDATION

The ALJ failed adequately to address three important issues as to Plaintiff's tremors. The ALJ also did not provide specific and legitimate reasons to reject the psychological evidence provided by Drs. Czysz and Gullo. As a result of these errors, the court should reverse and remand the case. Upon remand, the ALJ should address the errors set forth below as to the effect of Plaintiff's tremors and re-assess the evidence provided by Drs. Czyzs and Gullo, stating specific and legitimate reasons supporting the weight the ALJ attaches to those opinions. After considering these matters with all the evidence, the ALJ should determine whether it is necessary to formulate a new RFC that accurately reflects Plaintiff's limitations. If a new RFC is required, the ALJ should seek further testimony from a vocational expert and make a new determination as to whether Plaintiff is entitled to the award of benefits.

STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court must set aside the Commissioner's denial of Social Security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a

whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

## EVALUATING DISABILITY

The claimant bears the burden of proving that he is disabled within the meaning of the Social Security Act (the "Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled under the Act only if his impairments are of such severity that he is unable to do his previous work, and cannot, considering age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof during steps one through four. At step five, the burden shifts to the Commissioner. *See also Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009).

## ISSUES ON APPEAL

1. Did the ALJ properly consider Plaintiff's testimony concerning his upper extremity impairments?

2. Did the ALJ properly consider the medical opinions of James Czysz, Psy.D. and Allison Gullo, M.D.?

REPORT AND RECOMMENDATION - 4

## DISCUSSION

I. Tremors

Plaintiff suffers from "essential tremors," sometimes called "action tremors," in both his right and left hands. Essential tremor is a nervous system disorder that causes a rhythmic shaking. The trembling occurs most often in the hands, although it may also affect the head, voice, arms or legs. See Mayo Clinic Staff, Essential Tremor, available at http://www.mayoclinic.org/diseases-conditions/essential-tremor/basics/definition/CON-20034509. Stress and anxiety tend to make tremors worse. *Id.*

The ALJ found essential tremors as one of Plaintiff's severe impairments. But the ALJ did not accept Plaintiff's claims as to the degree of impairment caused by his tremors. In sum, she noted that the tremor was found during one examination to be mild on the right, and very slight on the left. AR 12, 687. Medical exams did not support the degree of limitation Plaintiff claimed. He was able to perform his activities of daily living fairly well. His condition seemed to be improving, and he had found some ways to cope with his tremors. The ALJ purported to give significant weight to the opinions of medical consultants Drs. Hurley and Stevik. Despite this, the ALJ rejected, without stating reasons, their opinions that Plaintiff's abilities in bilateral handling and fingering were limited. AR 19-20. The ALJ gave no reason for disregarding this evidence.

The RFC formulated by the ALJ included only one element relating to tremors: that "frequent handling and fingering can be performed in the upper extremities bilaterally." AR 16. The ALJ included the RFC in the hypothetical question she posed to the vocational expert ("VE"). AR 54. The VE testified that such a person could perform the specific jobs of Inspector and Hand Packager; Electrical Accessories Assembler; and Nut and Bolt Assembler.

REPORT AND RECOMMENDATION - 5

However, there is evidence about Plaintiff's tremors that raises troublesome questions as to whether this RFC fully reflects the limitations caused by his essential tremors, and whether Plaintiff could in fact perform any of these jobs. The ALJ did not adequately address these questions.

### A. Anxiety

The ALJ included "Anxiety Disorder" among Plaintiff's severe impairments. AR 12. Both Plaintiff and his medical records state that his tremors increase with anxiety. AR 45, 882. The neurology attending physician noted, "Thus, I suspect that a large portion of his tremors may be psychogenic and anxiety related." AR 886. The ALJ noted: "In regard to anxiety triggers, the claimant reported fear of reprisals, nervousness when given simple tasks, and occasions of being 'put on the spot.'" AR 17. Yet, the ALJ found that the Plaintiff can perform jobs with strict production rate requirements. One of the elements in the hypothetical was to, "…require work in a low stress environment defined as occasional changes in the workplace setting." AR 54. But the VE testified that in assembly type jobs, the production level might be a stressor, depending upon the worker's aptitude to perform the work and ability to maintain the pace. "The production rate is a decision that somebody else makes and that you're expected to maintain and there is no place to hide. You're there for no other reason but for the production and they know what you're producing and they know when you're not meeting your production quota." AR 59-60. There is a significant issue whether Plaintiff's tremors, even if not constant, would impair his ability to finger and handle the product, and therefore decrease his ability to produce in a timely fashion. Any anxiety over his inability to perform his task as required could elevate anxiety and increase the tremors. The ALJ did not address this issue.

B. *Interlacing Fingers and Clenching Fists*

Plaintiff testified that to help stop his tremors he has learned to interlace his fingers. It also helps to clench his fist and tap his palm. AR 43. The ALJ cites this as evidence of "improvement." AR 19. But the ALJ does not address the issue of how Plaintiff could perform any of the identified jobs with his fingers interlaced, or his hands clenched into fists.

C. *Violent Tremors*

Plaintiff testified that he sometimes has "violent" tremors. AR 38. He advised Dr. Burdick, in June of 2012, that his "violent" tremors have improved from 2-3 times per week to 2-3 times per month on propranolol. AR 874. The ALJ cites this as further evidence of improvement. While this might be true, it is not clear whether a person with "violent" tremors 2-3 times per month could maintain employment. The ALJ did not include such a limitation in the hypothetical question posed to the VE.

The case must be remanded for further findings on these issues by the ALJ (as well as for other reasons, discussed below). On remand, the ALJ should discuss each of the issues identified above concerning Plaintiff's tremors. As to each, she should analyze all of the related evidence, including medical records and opinions, Plaintiff's statements to his health care providers, and his testimony. She should then make specific findings as to whether any of these issues translate into additional limitations upon what Plaintiff can do and state specific and legitimate reasons for those findings. She should determine whether it is necessary to revise the RFC to reflect any such additional limitations.

II. Mental Impairments

The ALJ included affective disorder and anxiety disorder among Plaintiff's severe impairments. But despite doing so, the ALJ rejected the opinions of an examining psychiatrist and an examining physician.

REPORT AND RECOMMENDATION - 7

The ALJ evaluates medical evidence as part of the record when determining disability. 20 C.F.R § 416.927(b). Rejection of an uncontroverted medical opinion provided by an examining physician requires clear and convincing reasons. *Lester v. Chater*, 81 F.3d 821, 830 (1996). Rejection of a contradicted opinion requires specific and legitimate reasons supported by substantial evidence in the record. *Id*. at 830-1. In this case, Plaintiff contends that the ALJ improperly rejected the psychological opinions provided by examining medical professionals James Czysz, Psy.D. and Allison Gullo, M.D..

A.  *James Czysz, Psy.D.*

Dr. Czysz performed a psychological evaluation of Plaintiff in April 2010. AR 320-5. He diagnosed a severe episode of major depression. AR 321. During testing, Dr. Czysz found no impairment on the Neurobehavior Cognitive Status Exam. AR 324. But, he found Plaintiff to have moderate to marked impairments in several areas, including his ability to interact appropriately, care for himself, and maintain appropriate behavior in the work setting. AR 323. Dr. Czysz specifically noted Plaintiff's psychomotor slowing, which he observed during the consultation. AR 322. Due to this psychomotor slowing, Dr. Czysz opined that Plaintiff would have difficulty maintain pace and persistence over the course of a workplace. AR 322.  Dr. Czysz emphasized the impact of psychomotor slowing three separate times in the five page report. AR 321, 322, 324. He finally concluded that "the psychomotor slowing related to his depression and COPD would be a substantial employment barrier." AR 324.

The ALJ gave little weight to this opinion.

> This doctor declared that he based the claimant's GAF score partially on the records received for him to study, but on the first page of his evaluation Dr. Czysz specifically stated that he had no records to review. Also, there is an inconsistency in this doctor stating that the GAF score was based, in part, on testing when the administered testing showed the claimant was unimpaired in all domains of functioning. AR 20.

REPORT AND RECOMMENDATION - 8

Dr. Czysz might have erred in his determination of Plaintiff's GAF score. If so, this would support the ALJ in rejecting the GAF score. However, Dr. Czysz provided clinical observations and testing to support his opinion on Plaintiff's psychological impairment and barriers to employment. AR 320-5. The ALJ had specific and legitimate reason to reject the GAF score but not the portions of the opinion supported by clinical observations and testing. The ALJ should have given more consideration to Dr. Czysz' emphatic opinion that Plaintiff exhibited psychomotor slowing that would impact his employability.

B.  *Allison Gullo, M.D.*

Dr. Allison Gullo examined Plaintiff several times at the Veterans' Administration. AR 543, 562, 573, 590. She provided an assessment of his limitations in November 2010. AR 590-5. This psychological assessment included moderate to marked impairment in several areas including his ability to exercise judgment, relate appropriately to co-workers and supervisors, tolerate workplace pressures and expectations and care for himself. AR 593. The ALJ gave little weight to this opinion. "Although this source listed some functional areas in which she found the claimant had marked or severe limitations, her accompanying statements indicate that these conclusions were simply based upon what the claimant told her." AR 20. Plaintiff contends that the ALJ erred by rejecting this opinion.

Dr. Gullo noted that she observed symptoms of depressed mood, anhedonia, psychomotor agitation, fatigue, and feelings of worthlessness. AR 591. Based on the psychological assessment, Dr. Gullo actually observed these problems. The ALJ did not provide a specific and legitimate reason based on substantial evidence to reject this opinion.

The Commissioner contends that the ALJ properly rejected Dr. Gullo's opinion because it was brief and conclusory, consisting of checked boxes but very little narrative discussion explaining her conclusions. While that rationale might justify an ALJ in some cases to reject a

REPORT AND RECOMMENDATION - 9

medical opinion, the ALJ in this case did not rely on Dr. Gullo's brevity to dismiss the opinion. "[I]f the Commissioner's contention invites this Court to affirm the denial of benefits on a ground not invoked by the Commissioner in denying the benefits originally, then we must decline." *Pinto v. Massanari*, 249 F.3d 840, 847-8 (9th Cir. 2001). The ALJ failed to provide adequate reason based on the record to dismiss Dr. Gullo's opinion.

On remand, the ALJ should reassess Plaintiff's mental impairments, taking into account the opinions of Drs. Czysz and Gullo and the balance of the record. If the ALJ again gives little weight to the opinions of those two doctors, she must state legitimate and specific reasons for doing so.

III. Right Shoulder Impairments

The ALJ included "Right Shoulder Degenerative Arthritis" as one of Plaintiff's severe impairments. AR 12. She reviewed the medical evidence relating to this condition, including an x-ray report of "possible early degenerative change" in July of 2011, and an MRI a month later with a diagnosis of "moderate degenerative arthritis." AR 350. The ALJ noted that Plaintiff received some relief from injections and from the use of a TENS unit. The ALJ also considered Plaintiff's testimony and other evidence suggesting he had few limitations upon his ability to perform activities of daily living.

Having considered this evidence, the ALJ included in Plaintiff's RFC the following limitation: "Overhead reaching with the dominant right upper extremity can be accomplished on an occasional basis." AR 16. This was part of the hypothetical question to the VE. AR 54. Plaintiff contends this understates the true limitation on the use of his shoulder. But the court should conclude that this finding by the ALJ was supported by substantial evidence in the record, and need not be considered again on remand. The record shows that Plaintiff's shoulder pain was controlled with medication and the TENS unit. AR 39, 428, 398. He continues on a

REPORT AND RECOMMENDATION - 10

home physical therapy regime and has decent forward range of motion with his right arm. AR 39. He is independent in his activities of daily living including laundry and grocery shopping. AR 41. All of this evidence is consistent with an RFC that includes only occasional overhead reaching.

IV. Disposition

For the reasons discussed above, the ALJ erred in the evaluation of evidence concerning Plaintiff's tremors and his mental impairments. These significant errors require reversal. The decision whether to remand for additional evidence or simply to award benefits is within the Court's discretion. *Reddick v. Chater*, 157 F.3d 715, 728 (9th Cir. 1998). A remand for award of benefits is appropriate when each part of the three-part credit-as-true standard is satisfied. *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014). The requirements are:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

*Id*. Here, these requirements are not satisfied because significant evidence must be re-evaluated for incorporation into Plaintiff's RFC.

Upon remand, the ALJ shall comply with the specific directions set forth above, and make a new determination as to whether Plaintiff is entitled to benefits.

## CONCLUSION

For the foregoing reasons, the Court recommends that this case be REVERSED and the case REMANDED FOR FURTHER PROCEEDINGS. A proposed order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, must be filed with the Clerk and served upon all parties to this suit no later than fourteen (14) days after the date on which

REPORT AND RECOMMENDATION - 11

this Report and Recommendation is signed.  If no timely objections are filed, the Clerk shall note this matter for the earliest Friday after the deadline for objections, as ready for the Court's consideration. Failure to file objections within the specified time may affect a party's right to appeal.

If objections are filed, any response is due within fourteen (14) days after being served with the objections.  A party filing an objection must note the matter for the court's consideration fourteen (14) days from the date the objection is filed and served.  Objections and responses shall not exceed twelve pages.

DATED this 29th day of December, 2014.

*/s/ John L. Weinberg*
JOHN L. WEINBERG
United States Magistrate Judge

REPORT AND RECOMMENDATION - 12